**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CELSO ROBLEDO, MARIA ROBLEDO, MANUEL ROBLEDO, WALTER KOPEC, and JEFFREY MARTIN, on behalf of themselves and others similarly situated,** )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, )<br>) | |
| v. )<br>) | No. 05 C 0335 |
| **CITY OF CHICAGO, a municipal corporation, and BEA REYNA-HICKEY, in her individual capacity,** )<br>)<br>)<br>)<br>) | |
| Defendants. )<br>) | |

### MEMORANDUM OPINION AND ORDER

#### I. Background

The plaintiffs in this case, Celso Robledo, Maria Robledo, Manuel Robledo, Walter Kopec, and Jeffrey Martin allege that defendants, the City of Chicago (the "city") and the Director of the city's Department of Revenue, Bea Reyna-Hickey ("Reyna-Hickey"), violated their constitutional rights in events surrounding the immobilization and disposal of their motor vehicles. Plaintiffs' complaint states the following facts:

#### A. The Robledos

On July 8, 2004, the city placed a vehicle immobilization device called the Denver Boot on a vehicle owned by Celso and Maria

1

Robledo. On July 9, the city towed the vehicle to a pound owned and operated by the city. On July 15, Celso and Manuel Robledo went to the Department of Revenue and were told by agents there that they owed the city $2,790 due to unpaid parking tickets, and booting, towing, and storage fees. At the time, the Robledos paid $400, which represented the entire amount they had been able to raise, and offered to enter into a payment plan for the rest of their outstanding debt. The city accepted the $400 payment, but refused to release the vehicle and informed the Robledos that the debt would continue to increase at a rate of $35 per day due to additional storage fees. While at the Department of Revenue, Manuel and Celso Robledo also requested that they be able to retrieve personal items (a television, videocassette recorder, and other electronic items) belonging to Manuel Robledo from the impounded vehicle, but the city refused to allow the Robledos to retrieve the items.

On July 16, the city sent a letter to Celso Robledo stating that "[f]ailure to claim an impounded vehicle within 15 days of the date of this notice may result in sale or other disposition of the vehicle and its contents, as provided in Section 4-208 of the Illinois Vehicle Code." The Robledos were unable to raise the amount owed. On July 31, the city sold the vehicle to Environmental Auto Removal for approximately $150, which represented an amount "considerably less than both its fair market

2

value and the amount of money the Robledos had previously offered to pay the city under a payment plan."

On November 26, 2004, the city booted another vehicle owned by the Robledos. Between the day their first vehicle was booted and the day the second vehicle was booted the Robledos had not received any additional parking tickets. On November 29, the second vehicle was impounded by the city. The Robledos now owed a total of $3,070 to the city due to additional fees surrounding the impoundment of the second vehicle. According to the complaint, the city had not deducted any amount from the Robledos' debt for the value of the first vehicle (either the fair market value or the $150 the city received on its sale) or for the value of the personal property inside the vehicle. On November 30, the Robledos paid the full amount of the debt and the second vehicle was released.

## B. Walter Kopec

On January 2, 2004, the city booted a vehicle owned by Walter Kopec ("Kopec"). On January 6, this vehicle was impounded by the city. That same day, Kopec went to the Department of Revenue and was informed his vehicle would only be released if he paid the full amount of his debt, which was $910. Later that day, Kopec returned with $910, but was informed his full debt was actually $1,290. On January 9, Kopec once again returned, but was informed that the city could not locate his vehicle. On January 12, Kopec again returned and was told the full amount owing was now $1,385. On

3

January 20, Kopec went before a hearing officer to complain about defendants' conduct and the handling of his case. Kopec's request for a hearing was subsequently withdrawn, however, because the subject of his complaint was not related to contesting the underlying validity of parking tickets that led to the seizure of his vehicle. On January 21, Kopec returned to the Department of Revenue willing and able to pay the full amount of his outstanding debt, but was informed at that time that the city had already disposed of his vehicle.

## C. Jeffrey Martin

On July 28, 2004, the city booted a vehicle owned by Jeffrey Martin ("Martin"). On August 2, the vehicle was impounded by the city. In late August, Martin called the city to ask if he could pay the full amount owing with a credit card. During the conversation, Martin was informed that his vehicle had been destroyed.

## D. General Allegations

Plaintiffs allege that the city's conduct violated their right to procedural due process by disposing of their vehicles and property without adequate notice or providing a hearing at which they could raise certain objections to the disposal of their vehicles (count I); that the disposition of their vehicles without compensation constituted a taking without just compensation (count II); that the disposition of their vehicles without compensation

4

constituted a criminal penalty which entitled them to certain protections of the Fifth and Sixth Amendments to the United States Constitution (the right to be charged with an offense, the right to trial by jury, and the right to be proven guilty beyond a reasonable doubt) which the city did not provide (count III); that the disposition of their vehicles without compensation violated substantive due process because it constituted punishment even though plaintiffs had not been convicted of a crime (count IV); that the seizure of the Robledos' second vehicle after disposition of their first vehicle was an unreasonable seizure in violation of the Fourth Amendment and constituted a second punishment for the same offense in violation of the principle of double jeopardy (count V); and that they are also entitled to recovery under the state law theories of inverse condemnation (count VI), bailment (count VII), and conversion (count VIII).

Plaintiffs also move to certify three different classes in this action. Class A is represented by all the named plaintiffs and includes individuals who had their vehicles disposed of by the city without compensation. Class B is represented by Manuel Robledo and includes individuals whose personal property that had been located in an impounded vehicle was disposed of by the city without compensation. Class C is represented by Celso and Maria Robledo and includes those individuals who had a first vehicle

disposed of by the city without compensation and subsequently had a second vehicle impounded based upon the same underlying debt.

## II. Motion to Dismiss

Defendants have filed a motion to dismiss all claims. On a motion to dismiss, I accept all well-pleaded facts in the complaint as true. *Gomez v. Illinois State Bd. of Education*, 811 F.2d 1030, 1039 (7th Cir. 1987). I must view the allegations in the light most favorable to the plaintiff. *Id.* Dismissal is proper only if the plaintiff can prove no set of facts to support his claim. *First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002).

### A. Procedural Due Process Violations

Plaintiffs' complaint alleges that they received both inadequate notice that the city would dispose of their vehicles and that they were not provided a forum at which they could present certain objections to the disposition. Defendants argue that the notice and hearing provided to plaintiffs were adequate as a matter of law and that plaintiffs have therefore failed to state a claim.

In order to state a claim for a violation of due process, a plaintiff must show a cognizable property or liberty interest and that a deprivation of that interest occurred without due process. *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003). Plaintiffs have a protectable property interest in their property and their vehicles. *See Sutton v. City of Milwaukee*, 672 F.2d 644, 645 (7th

6

Cir. 1982) "The Supreme Court has long made clear that due process requires notice reasonably calculated to provide actual notice of the proceedings and a meaningful opportunity to be heard." *Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir. 1999).

The complaint states:

> [The city] sent a letter . . . stating that '[f]ailure to claim an impounded vehicle within 15 days of the date of this notice may result in the sale or disposition of the vehicle and its contents, as provided in Section 4-208 of the Illinois Vehicle Code.' The letter further stated that the vehicle would not be released [] unless [the owner] presented a 'release order receipt.'

The language in the letter is based upon § 9-100-120(f) of the Chicago Municipal Code, which governs the immobilization of vehicles. Section 9-100-120(f) states:

> Within ten days after a vehicle has been impounded, a notice of impoundment shall be sent . . . . The notice shall state . . . that if the vehicle is not claimed within 15 days from the date of the notice, the vehicle may be sold or otherwise disposed of in accordance with Section 4-208 of the Illinois Vehicle Code.

Section 9-100-120(d) of the Chicago Municipal Code states:

> The owner of an immobilized vehicle or other authorized person may secure the release of the vehicle by paying the immobilization, towing, and storage fees provided in subsection (g) herein, and all amounts, including any fines and penalties remaining due on each final determination for liability issued to such person.

Defendants argue that to "claim" a vehicle, as used in § 9-100-120(f), is shorthand for "securing the release" of a vehicle, as described in § 9-100-120(e), and that an owner is therefore adequately on notice that in order to "claim" a vehicle he must pay

7

his debt in full. Plaintiffs argue that the language in the letter and the ordinance uses two distinct terms and that, while neither the letter received by plaintiffs nor the Chicago Municipal Code explicitly define what it means to "claim" a vehicle, both inform plaintiffs that disposition of their vehicles will be "in accordance with Section 4-208 of the Illinois Vehicle Code." Plaintiffs point out that the Illinois Vehicle Code does provide guidance on what it means to "claim" a vehicle. Section 4-208 of the Illinois Vehicle Code states:

> [W]henever an abandoned, lost, stolen or unclaimed vehicle, or vehicle determined to be a hazardous dilapidated motor vehicle . . . remains unclaimed . . . for a period of 15 days after notice has been given . . . . if during that 15 days the possessor of the vehicle has sent an additional notice by first class mail to the registered owner, lienholder, or other legally entitled person, the vehicle shall be disposed . . .

Section 4-207(a) of the Illinois Vehicle Code explains that one may, however, "reclaim" a vehicle prior to disposition:

> Any time before a vehicle is sold at public sale or disposed of as provided in Section 4-208 . . . the owner, lienholder or other person legally entitled to its possession may reclaim the vehicle by presenting to the law enforcement agency having custody of the vehicle proof of ownership or proof of the right to possession of the vehicle.

Therefore, according to plaintiffs, the language in the letter and ordinance must describe two distinct actions that an owner may take. First, in order to prevent the disposition of his vehicle, an owner may "claim" his vehicle. Second, in order to regain possession of his vehicle, an owner may "secure the release" of his

8

vehicle by obtaining a release order receipt. *See also Lee v. City of Chicago*, 330 F.3d 456, 469 (7th Cir. 2003) ("The clear import of this distinction in the statutory language is that an owner may alleviate the threat of loss or destruction of his car by properly asserting entitlement to the vehicle even if he lacks the funds to arrange for the car's immediate release.") As a result, plaintiffs argue that any notice they received was inadequate because it informed them that their vehicles would be destroyed only if they failed to "claim" their vehicles. Plaintiffs say they did "claim" their vehicles (within the meaning of that term as it is used in the Illinois Vehicle Code) and thus had no notice that the city intended to dispose of their vehicles.

"Fair or adequate notice has two basic elements: content and delivery. If the notice is unclear, the fact that it was received will not make it adequate." *Fogel v. Zell*, 221 F.3d 955, 962-63 (7th Cir. 2000). The language in the city's letters to plaintiffs and the ordinance state that plaintiffs' "vehicle[s] may be sold or otherwise disposed of *in accordance with Section 4-208 of the Illinois Vehicle Code.*" (emphasis added). The Illinois Vehicle Code contemplates that only "unclaimed" vehicles will be disposed of; an owner may prevent disposition by "reclaiming" his vehicle. Plaintiffs have thus stated a claim for a violation of due process because, if this language was the only notice provided to plaintiffs and they did in fact "claim" their vehicles, they were

9

not given clear notice that their vehicles would be disposed of by the city.[1]

Plaintiffs also argue that the city deprived them of due process by not providing a forum at which they could show that disposition of their vehicles was improper because 1) they had "claimed" their vehicles and 2) in the case of Kopec, because he had actually attempted to pay his full debt in accordance with the city's demands, but that the city had not accepted his payment due to no fault of his own. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 542 (U.S. 1985) (quoting *Mullane*, 339 U.S. at 313). Plaintiffs' allegation that they were not given a forum at which they could present their objections to disposition also states a claim for violation of due process.[2]

---

[1] Plaintiffs argue that there may exist a separate due process violation based upon the fact that vehicle owners were not given notice that they would not receive compensation when their vehicles were disposed of by the city. Neither the letter plaintiffs received nor the ordinance state or give the impression that an owner of a disposed vehicle would be credited for the value of his car if he failed to claim his vehicle by asserting his interest in the vehicle. The language creates the expectation that no compensation would be given and the fact that plaintiffs may have had the unilateral expectation that compensation would accompany disposition does not state a separate claim in this case.

[2] Both parties have provided a detailed analysis regarding the adequacy of the city's current § 9-100-120(e) hearing and

10

Plaintiff Manuel Robledo also brings a separate procedural due process claim for the destruction of his personal property located in Celso and Maria Robledo's vehicle without adequate notice or hearing. Manuel Robledo's claim is based on the sequence of events in which he went with Celso Robledo to retrieve his property from the Robledos' vehicle, asserted his right to possess those items to city employees, was prevented from retrieving his property by city employees, and was not given notice that the property would be disposed of if the Robledos did not satisfy their full debt.

Defendants argue this claim should be dismissed because Manuel Robledo has only generally alleged that the deprivation occurred pursuant to city policy. Having failed to allege a specific municipal policy, defendants argue that Manuel Robledo has only alleged a random and unauthorized violation of due process by city agents. The city argues that Manuel Robledo would be required to allege that he "avail [himself] of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate."

---

appropriateness of requiring an additional hearing under the test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Given the circumstances of this case, this matter is not appropriately decided on a motion to dismiss. For example, defendants argue that an additional hearing on these issues would be unnecessary because these issues "can be brought to City's attention without requiring a hearing." The record before the court does not however, explain what informal procedures currently exist, why these procedures would be adequate to avoid erroneous deprivations, or that these procedures were made available to plaintiffs in this case. Furthermore, it would be inappropriate to decide plaintiffs' claims on facts that go well beyond the allegations of the complaint.

*See Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996). Manuel Robledo has not done so in his complaint.

"Complaints need not plead law or match facts to every element of a legal theory." *See Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir. 1998). The complaint alleges that the city "fail[s] to provide [Manuel Robledo and other members of proposed Class B] with notice that the City intends to sell, destroy, or otherwise dispose of their possessions contained in vehicles seized by defendants." This language adequately alleges that the deprivation occurred pursuant to city policy and states a claim for a due process violation that occurred pursuant to city policy. *See Id.; Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467, 480 (7th Cir. 1997). Indeed, defendants' statement that the city's policy of delivering vehicles and the notice that it argues is adequate "surely . . . also [gives] . . . notice that any personal property in the vehicle will be similarly dispensed of" (Defendants' Reply at 15, n. 11) essentially admits a policy. Where a policy is alleged, as opposed to random actions by a state actor, a plaintiff need not plead the absence of adequate state remedies. *Doherty*, 75 F.3d at 323. Accordingly, defendants' motion to dismiss count I is denied.

## B. Takings Claims

Defendants argue that plaintiffs' takings claims should be dismissed because they are not ripe. Plaintiffs concede that their claims are not ripe and request that the court dismiss these claims

12

without prejudice. Accordingly, Count II is dismissed without prejudice.

C. Fifth and Six Amendment Violations

Plaintiffs' third count alleges that the disposition of their vehicles without compensation constituted a criminal penalty which entitled them to certain protections of the Fifth and Sixth Amendments (the right to be charged with an offense, the right to trial by jury, and the right to be proven guilty beyond a reasonable doubt) which the city did not provide. Defendants argue that these claims fail because the disposition of plaintiffs' vehicles was not a criminal sanction.

The determination of whether a particular sanction is criminal or civil is a two-part inquiry. *Hudson v. United States*, 522 U.S. 93, 99 (U.S. 1997). In the first step, the court determines if the legislature "indicated either expressly or impliedly a preference for one label or the other." *Id.* (quoting *United States v. Ward*, 448 U.S. 242, 248 (1980)). In the second step, if the legislature "has indicated an intention to establish a civil penalty," the court determines "whether the statutory scheme [is] so punitive either in purpose or effect as to negate that intention." *Ward*, 522 U.S. at 248-49.

In 1990, the city abandoned a system that treated parking violations as "technically criminal" and replaced it with a "civil penalty system." *Van Harken v. City of Chicago*, 103 F.3d 1346,

13

1349 (7th Cir. 1997). Defendants point out that vehicle disposition was not a part of the earlier criminal system, but can now be found in the Chicago Municipal Code as a means of enforcing the city's current civil penalty system. Section § 9-100-20(a) states "[t]he violation of any provision of the traffic code prohibiting or restricting standing or parking, or establishing a compliance violation, shall be a civil offense punishable by fine, and no criminal penalty, or civil sanction other than that prescribed in the traffic code shall be imposed." Nothing in the code suggests vehicle disposition, as opposed to any other action taken to enforce parking regulations, was intended to be a criminal penalty. Furthermore, the language authorizing vehicle disposition is found in § 9-100-120 which empowers the city traffic compliance administrator to direct and supervise a program of vehicle immobilization. *Turner v. Glickman*, 207 F.3d 419, 429 (7th Cir. 2000) ("It is widely-recognized that the fact that Congress makes a statute enforceable by an administrative agency 'is prima facie evidence that Congress intended to provide for a civil sanction.'" (quoting *Hudson*, 522 U.S. at 103). Accordingly, vehicle disposition is presumptively civil.

Since vehicle disposition is intended to be part of a civil scheme of enforcement, plaintiffs must present 'the clearest proof,' that 'the statutory scheme [is] so punitive in purpose or effect', as to 'transform what was clearly intended as a civil

14

remedy into a criminal penalty.'" *Turner*, 207 F.3d at 429-30 (quoting *Hudson*, 522 U.S. at 100 and *Ward*, 448 U.S. at 249). I am to consider seven factors:

(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment--retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Turner*, 207 F.3d 430 (quoting *Kennedy v. Mendoza-Martin*, 372 U.S. 144, 168-69 (1963)). In applying this test, "we look only to 'the statute on its face' to determine whether a penalty is criminal in nature." *Hudson*, 522 U.S. at 104 (quoting *Kennedy*, 372 U.S. at 169).[3]

Four Factors, (1), (3), (5), and (6), support a finding that the city's disposition of vehicles as described in the ordinance is civil. First, the loss of one's vehicle does not represent an affirmative disability or restraint (i.e. it does not constitute imprisonment). *Hudson,* 522 U.S. at 104. Second, the disposition of a vehicle does not turn on the vehicle owner's state of mind and

---

[3] In this inquiry, the court only examines the city's authority to dispose of "unclaimed" vehicles. Therefore, to the extent plaintiffs have argued that the city is disposing of vehicles that are not "unclaimed," that action is not authorized by the ordinance and is not properly addressed as part of this inquiry.

15

therefore does not come into play only on a finding of scienter. Third, the behavior that triggers vehicle disposition is not otherwise punishable as a crime. Fourth, the defendants have stated that vehicle disposition serves the non-punitive purposes of 1) reducing the expense of storing seized (and "unclaimed") cars; 2) inducing scofflaws to pay their debts; 3) keeping vehicles used by serial parking scofflaws off the streets; and 4) regulating traffic flow and facilitating commercial activity. Each of these four purposes is remedial in nature and rationally related to the disposition of an "unclaimed" vehicle.

Factor (2), whether vehicle disposition has historically been considered punishment, is inconclusive. Prior to 1990, the city had a "technically criminal" system of enforcing parking regulations. *Van Harken,* 103 F.3d at 1349. Defendants point out that vehicle disposition was not a part of this criminal system. In 1990, the city switched to a civil enforcement system and vehicle disposition is now a part of that civil system. *Id.* Accordingly, this factor does not conclusively favor either a civil or criminal characterization.

Factor (4) is also inconclusive. Plaintiffs argue that disposition of their vehicles serves as a deterrent and also has a retributive effect because it deprives the owner of his entire interest in the vehicle for failure to pay his debt to the city. Generally speaking, the loss of one's property, similar to a fine,

16

has an inherent retributive and deterrent effect. *Van Harken v. City of Chicago,* 906 F. Supp. 1182, 1191 (N.D. Ill. 1995) ("every fine does have some retributive and deterrent effects"). *Hudson,* 522 U.S. at 105 ("the mere presence of [a deterrent] purpose is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.'") (quoting *United States v. Ursery,* 518 U.S. 267, 292 (1996)). As discussed earlier, however, if the language of § 9-100-120(f) is read in conjunction with the Illinois Vehicle Code, it indicates that disposition is a means of dealing with vehicles that remain "unclaimed" because owners have failed to assert an interest in them. If an owner has chosen not to assert his property interest in a vehicle, the retributive and deterrent effects of disposition of that vehicle are certainly minimized. Thus, this factor also does not conclusively favor either a civil or criminal characterization.

Factor (6) does support a finding that vehicle disposition is a criminal punishment. The disposition of one's vehicle without compensation for failure to claim one's vehicle after incurring potentially as few as three parking tickets is severe. The presence of this single factor is insufficient to support a finding that the vehicle disposition is a criminal measure, however. *See Hudson,* 522 U.S. at 101 (disavowing *United States v. Halper,* 490 U.S. 435 (1989), for having characterized a penalty as criminal based solely on the presence of this single factor). Furthermore,

17

the potential excessiveness of vehicle disposition is also minimized by the fact that the ordinance only contemplates the disposition of "unclaimed" vehicles in which the owner has not asserted his interest.

Overall, the factors weigh strongly in favor of a civil characterization of vehicle disposition. Plaintiffs would not be able to meet their substantial burden of showing "by the clearest proof" that the disposition of their vehicles constituted criminal punishment. Plaintiffs accordingly were not entitled to the protections provided by Fifth and Sixth Amendment to the United States Constitution. Defendants' motion to dismiss Count III is granted.

D. Double Jeopardy and Fourth Amendment Violations

The Robledos argue that the disposition of their vehicle was criminal punishment for failure to pay their debt to the city, and that the seizure of the second vehicle violated principles of double jeopardy because it attempted to punish them a second time for the same offense. "The [Double Jeopardy] Clause protects only against the imposition of multiple *criminal* punishments for the same offense." *Hudson*, 522 U.S. at 99. Since, I have already determined that vehicle disposition under the Chicago Municipal Code is not a criminal sanction, the principles of double jeopardy do not apply. Accordingly, I grant defendants' motion to dismiss this claim.

18

The Robledos also claim that the immobilization of their second vehicle violated the Fourth Amendment because it constituted an unreasonable seizure. Plaintiffs' only argument supporting this claim is that because the second seizure violated the principle of double jeopardy, it also constituted an unreasonable seizure. Since defendants did not violate the principle of double jeopardy, the seizure of the Robledos' second vehicle was not unreasonable for this reason. I also grant defendants' motion to dismiss this claim.

## E. Substantive Due Process Violations

Count IV alleges that defendants violated plaintiffs' substantive due process rights for the sole reason that "[s]ubstantive due process forbids the City, its employees and agents to take actions that amount to punishment of a person not convicted of a crime." Again, since I have already determined that vehicle disposition is not a criminal sanction, I grant defendants' motion to dismiss plaintiffs' substantive due process claim.

## F. Claims against Reyna-Hickey

Defendants argue that all federal claims against Reyna-Hickey in her individual capacity should be dismissed because plaintiffs only generally allege that she "directed the actions of which they complain." At this point, the only remaining federal claim against Reyna-Hickey is the procedural due process violation. Plaintiffs' allegations are sufficient to state a claim and put

19

Reyna-Hickey on notice of the claims against her. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) ("All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.").

Defendants next argue that the claims against Reyna-Hickey in her individual capacity should be dismissed because she is entitled to qualified immunity. "[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). From the complaint, it is impossible for me to ascertain what role Reyna-Hickey played in the alleged violations. Although the allegations are sufficient to withstand a motion to dismiss, they are not sufficient for me to determine the issue of qualified immunity at this time. Therefore, defendants' arguments would be more appropriately revisited when the case has a more developed record. For the above reasons, defendants' motion to dismiss the remaining claims against Reyna-Hickey is denied.

## G. State Law Claims

Pursuant to 28 U.S.C. § 1367, I exercise supplemental jurisdiction over plaintiffs' state law claims of inverse condemnation, bailment, and conversion which constitute part of the same case and controversy as plaintiffs' federal claims.

## III. Motion for Class Certification

Plaintiffs bring a motion for certification of three different

20

classes of plaintiffs in this action. I have determined that the only remaining claims in this case are for due process violations and the state law actions of inverse condemnation, bailment, and conversion. Therefore, plaintiffs' motion will be evaluated only with respect to those claims.

In order to certify a class, I must determine that the four prerequisites of FED. R. CIV. P. 23(a) are met, and that the action is maintainable under FED. R. CIV. P. 23(b)(1), (2), or (3). The four prerequisites of Rule 23(a) are that 1) the proposed class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims of the representative parties are typical of the claims of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. Plaintiffs proceed under FED R. CIV. P. 23(b)(3), which requires that "questions of law and fact common to the members of the class predominate over any questions only affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

## A. Class A Plaintiffs

Plaintiffs' motion states that "Class A consists of those persons whose vehicles were towed, impounded, and disposed of by defendants, such sale or destruction having occurred no more than two years from the filing of this lawsuit on January 19, 2005."

21

### i. Numerosity

In order to satisfy the numerosity requirement, a class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Based upon the city's records of vehicle impoundments and dispositions at three of its five pounds between January 1 and November 30, 2004, plaintiffs estimate that the city crushed 18,318 vehicles that had been booted for unpaid parking tickets. The number of class members meets the numerosity requirement without question. *See e.g. McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (D. Ill. 2002) ("Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1).") While this number is just an estimate, I have reviewed the record and have no reason to believe it could be so inaccurate as to make the class fail the numerosity requirement.[4]

### ii. Commonality

The second requirement of FED. R. CIV. P. 23(a) is that "there

---

[4] This estimate must be reduced in evaluating the alleged due process violation. Plaintiffs' due process claims are premised on the fact that an owner was only given notice that the city would dispose of his vehicle if it went "unclaimed." Therefore, with regard to the due process violation, this estimate should be reduced to those plaintiffs who actually "claimed" their vehicles. A plaintiff who failed to "claim" his vehicle (thereby leaving it "unclaimed") would have been on notice of its impending disposition because the notice he received warned that the city would dispose of "unclaimed" vehicles. Common sense dictates that this number still far exceeds that necessary to meet the numerosity requirement and it does not affect my conclusion regarding this factor.

are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The commonality requirement is satisfied by showing "a common nucleus of operative fact." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

In this case, the claims of the plaintiffs in Class A are all based on the city's standardized conduct surrounding the disposition of vehicles impounded for parking violations. The due process violations arise out of the standard notice and (lack of) hearing provided to plaintiffs by the city. The state law claims arise out of standard conduct surrounding the holding and disposition of their vehicles. Accordingly, I find that there are questions of law and fact common to the class.

### iii. Typicality

The third requirement of FED. R. CIV. P. 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De la Fuente v. Stokely-Van Camp Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quoting H. NEWBERG, CLASS ACTIONS § 1115(b) at 185 (1977)). In this case, the claims of all potential class members are identical and based upon the same legal theories. Furthermore, as discussed under the commonality requirement, the claims of each

23

class member all arise out of the same course of conduct and city policies. Therefore, I find the claims of the prospective class members meet the typicality requirement.

iv. Adequacy of Representation

The final requirement of FED. R. CIV. P. 23(a) is that the class representative must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Defendants have not argued (and I have found nothing in the record) that indicates that the representative parties (Celso and Maria Robledo, Kopec, and Martin) have any conflicting or antagonistic claims with other class members; that the named parties do not have a sufficient interest in the outcome of the litigation; or that counsel is not competent, experienced, and qualified. *McKenzie v. City of Chicago*, 175 F.R.D. 280, 287 (N.D. Ill. 1997). Therefore, I find that the named parties and their counsel adequately protect the interests of the class.

v. Predominance and Superiority

FED. R. CIV. P. 23(b)(3) requires that plaintiffs demonstrate that 1) questions of law or fact common to all members of the class predominate over any individual questions and 2) a class action is a superior method of adjudication. In this case, the adequacy of the standard notice given to plaintiffs, the lack of a forum available to all plaintiffs for disputing vehicle disposition, and the city's standard procedures regarding the disposition of

24

vehicles form the core of the class claims. Undeniably, some issues specific to individual plaintiffs may arise. For example, the city may dispute whether an individual plaintiff ultimately received adequate notice from city officials regarding his vehicle's disposition, or the city may dispute whether an individual plaintiff attempted to "claim" his car. The presence of these individual issues is not fatal to class certification and does not change the fact that defendants' standard conduct and procedures are central and common to each potential plaintiffs' claims and predominate over these potential individual issues.

Furthermore, I find that the class action is a superior method for adjudicating these claims. Plaintiffs allege constitutional violations on the part of defendants. It is likely that this conduct would go otherwise unchallenged if a class was not certified because the value of the individual claims in this case is likely not large enough to justify individual prosecution. Additionally, because the claims of all plaintiffs turn on the same law and standardized practices, individual adjudication of the claims of each class member would be an inefficient use of judicial resources.

## B. Class B Plaintiffs

Plaintiffs' motion states:

Class B consists of those persons [including vehicle owners and third parties] who had personal property located in the vehicles that defendants seized, who asserted an interest in such property after the seizure,

and whose property defendants nonetheless sold,
appropriated, or destroyed, no more than two years before
the filing of this lawsuit on January 19, 2005.

The burden is on the plaintiffs to demonstrate that a class is
appropriate for certification. *Retired Chicago Police Ass'n v.
City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Plaintiffs have
not demonstrated that any common issues of fact and law predominate
over individual questions for Class B.

There is nothing in the record before the court indicating the
existence of a record of the personal property that was contained
in vehicles at the time they were disposed of by the city.
Additionally, there is nothing in the record before the court
indicating the existence of a record of non-vehicle owners who
asserted an interest in their property contained in a vehicle
prior to its disposition by the city. Thus, in order to determine
if an individual is a proper Class B plaintiff and to resolve that
individual's claims, the court would be required to spend
considerable time evaluating testimony regarding: 1) the existence
and value of that individual's property; 2) that individual's
interactions with any one of countless employees of the city in
order to determine whether that individual in fact asserted an
interest in the property prior to its disposition; and 3) whether
that individual received notice of the impending disposition from
the city at any point. These individualized issues would
predominate over issues common to the class and make the class

unmanageable. *See e.g., Hamilton v. O'Connor Chevrolet, Inc.*, 2006

U.S. Dist. LEXIS 44149, at *33 (N.D. Ill. June 12, 2006).[5]

### iv. Conclusion

For the foregoing reasons, defendant's motion to dismiss plaintiffs' procedural due process and plaintiffs' state law claims is denied. Defendants' motion to dismiss all other federal claims is granted. Plaintiffs' motion to certify Class A is granted. Plaintiffs' motion to certify Classes B and C is denied.

**ENTER ORDER:**

*Elaine E. Bucklo.*

**Elaine E. Bucklo**
United States District Judge

DATED: August 9 , 2006

---

[5] The issues of law and fact listed by plaintiffs as common to all members of Class C pertain to claims that have already been dismissed in this action. Therefore, there is no basis to certify this class and I deny plaintiffs' motion to certify Class C.