## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CELSO ROBLEDO, MARIA ROBLEDO, WALTER KOPEC, and JEFFREY MARTIN, on behalf of themselves and others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 05 C 0335 |
| v. | ) ) | Judge Elaine E. Bucklo |
| CITY OF CHICAGO, a municipal corporation, | ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Attorneys for Plaintiffs

Matthew J. Piers
Mary M. Rowland
Cara Hendrickson
**Hughes Socol Piers Resnick & Dym, Ltd.**
Three First National Plaza, Suite 4000
Chicago, Illinois 60602
(312) 580-0100

Judson H. Miner
George F. Galland, Jr.
**Miner Barnhill & Galland, P.C.**
14 West Erie Street
Chicago, Illinois 60610
(312) 751-1170

Dated: September 17, 2010

# I. INTRODUCTION

Before the Court are dueling motions for summary judgment on plaintiff class members'

claim that the City of Chicago violates their due process rights when it disposes of cars that they

own without affording them an opportunity to preserve their property interest in the vehicles,

through the provision of the requisite notice, hearing and merits decision that would secure that

opportunity. The case has been the subject of substantial discovery and multiple rounds of

briefing, which have served to narrow and clarify the issues. The facts that underlie both motions

are not in dispute.

The City does not dispute that members of the plaintiff class, car owners, were deprived

of a constitutionally protected property interest when the City disposed of their cars. Rather, the

City asserts that it is entitled to summary judgment because (a) it has afforded plaintiffs all the

pre-deprivation process they are due; and (b) plaintiffs have adequate post-deprivation remedies

available to them.[1]

More specifically, with respect to providing adequate pre-deprivation notice to the

plaintiffs, the City asserts that it provides constitutionally sufficient notice because it notifies car

owners *what the City's Policy is* (i.e., that it will destroy the vehicle if the owner does not pay all

---

[1] The City dedicates a portion of its brief to arguing why plaintiffs are not entitled to rely on the state statutory framework embodied in the Illinois Vehicle Code to establish liability under the Due Process Clause. The Vehicle Code (and, in particular, Section 4-208) is irrelevant to plaintiffs' due process claim or indeed to any claim, federal or state, that plaintiffs raise in the case; the contrary notion is mistaken, *see* Pltffs' Mem in Support of Summary Judgment ("Pltffs Mem") at 12, n. 7. It follows that the arguments by the City regarding the Vehicle Code are irrelevant and so are not addressed here: (1) the City's "failure to follow a substantive requirement of state law does not amount to" a due process violation (Def's Mem at 7, 10-12); (2) due process does not require it to provide a "detailed interpretation of a state statute," (*id.* at 12-14); and (3) the home rule doctrine allows the City to disregard the state statutory requirements, (*id.* at 16-21).

debts in full).[2] Def's Mem at 2-3. With regard to the provision of a pre-deprivation hearing, the City advances four contentions: (1) the hearings it provides to owners on the underlying tickets and booting provide an adequate opportunity to be heard (*id.* at 4-6), (2) a hearing at which plaintiffs could assert ownership is not required because under the City's Policy "whether an owner has asserted ownership is irrelevant;" (*id.* at 8), (3) plaintiffs may assert an ownership interest in the vehicles (albeit the assertion is deemed irrelevant and so has no bearing on the outcome of the hearing), and (4) the hearings the City provides at which plaintiffs can assert ownership (even if irrelevant to the outcome of the hearing) is all that is required by *Mathews v. Eldridge,* 424 U.S. 319 (1976), because the interest of class members in their vehicles is "minimal" and the "City's interest against providing unnecessary additional procedures is substantial." *id.* at 21-26. In any event, the City concludes, even if the pre-deprivation process it affords does not pass constitutional muster, the post-deprivation state remedies it says are available to plaintiffs ensure that their due process rights are respected. *Id.* at 14-15. Each of these arguments is groundless, and the City's motion for partial summary judgment should be denied.[3]

---

[2] The parties and the Court agree that the City's notice so provides. Dkt. 252, Order Denying Motion to Decertify Class (June 2, 2009) at 2. The City's argument to prohibit the plaintiffs from asserting to the contrary is irrelevant to the matters in dispute. Def's Mem at 4.

[3] The City has moved for summary judgment only as to Count I of the First Amended Complaint. The City requests the Court to decline jurisdiction over Counts VI and VII, claims based on inverse condemnation law and bailment law.

## II. ARGUMENT

**A.      The pre-deprivation process on which the City relies for summary judgment does not meet due process standards.**

> **1.    The City's pre-deprivation notice is constitutionally inadequate.**

Due process requires that a person be given an opportunity to assert his or her entitlement to property prior to the government being permitted to deprive them of that property. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433-34 (1982)("... the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim to entitlement.") The City asserts that its Notice "comports with due process because it conveys to owners precisely what they must do *under the City's Policy* to forestall disposition of their vehicle." Def's Mem at 2 (emphasis added). The principle thereby advanced– that it is the province of the City to define federal due process requirements by reference to its (the City's ) own procedures (indeed the very procedures plaintiffs' challenge) disregards Fourteenth Amendment jurisprudence. In *Logan,* 455 U.S. at 430, the Court observed:

> Each of our due process cases has recognized, either explicitly or implicitly, that because 'minimum [procedural] requirements [are] a matter of federal [constitutional] law, they are not diminished by the fact that the State [or other government entities] may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action. \*\*\* Indeed, any other conclusion would allow the State to destroy at will virtually any state-created property interest.

The property interest at stake in *Logan* was the state-created right to file a complaint based upon employment discrimination. The Court stated:

> [w]hile the legislature may elect not to confer a property interest ... it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.... [The] adequacy of ... procedures for deprivation of a statutorily created property interest [or other constitutionally

3

protected property interest] *must be analyzed in constitutional terms.*

*Id.* at 432 (citations omitted)(emphasis added).

Relying on *Logan,* the Seventh Circuit rejected the same argument the City makes here in *Youakim v. McDonald,* 71 F.3d 1274 (7th Cir.), *cert. denied,* 518 U.S. 1028 (1996). As explained in Pltffs' mem at 14-15, in *Youakim,* after the state legislature had revised the *substantive* requirements for receiving DCFS foster care payments, the state defended against the due process challenge by asserting that its legislative action meant that the plaintiffs no longer had a property interest in the DCFS payments. Quoting *Logan* for the proposition that the constitutional *procedures* required for deprivation of protected property are a matter of federal *constitutional* law, regardless of what process the local authorities might have established and deemed adequate, the *Youakim* Court rejected the defendants' circular reasoning because the state's "tautological argument misunderstands the due process jurisprudence of this court and the Supreme Court. Once a property interest has been created by a state, that interest may subsequently be eliminated, but only pursuant to constitutionally adequate procedure." *Id.* at 1289.

In simple terms, the City's adoption of a policy or procedure for disposing of private property does not establish the Constitutionality of that policy or procedure. If that were the law, then the Due Process Clause would be correctly understood to have ceded to state and local authorities the authority to define federal constitutional rights, rather than imposing on them the obligation to respect such rights. It follows that the City here cannot satisfy due process by simply notifying the plaintiff class members what its aldermen determined the City's policy is.

4

2. **The City's pre-deprivation hearing process is constitutionally inadequate.**

    a.   **The hearings provided by the City, which are limited to contesting the number and the validity of the parking tickets issued, are irrelevant to the plaintiffs' constitutional right.**

The City also argues that its procedures comply with due process because it offers several hearings on the validity of the underlying tickets and the car's eligibility for impoundment. Def's Mem at 4-5. But the Due Process Clause requires hearings *"appropriate to the nature* of the case.'" *Robledo,* 444 F. Supp. 2d at 902 (quoting *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 542 (1985)) (emphasis added), meaning that the subject matter of the hearing (what is substantively at issue) must involve a plaintiff's "claim of entitlement" (here a claim of ownership of the cars the City has threatened to sell or otherwise dispose of) and give rise to a "merits decision" as to that issue. *See Youakim,* 71 F.3d at 1292. Yet hearings limited to contesting the validity of the parking ticket at issue or whether the required number of tickets have been issued to authorize impoundment (the ones on which the City relies here) are, by definition, hearings the subject matter of which is *not* a plaintiff's claim to ownership of the car in question and hearings that do not give rise to "merits decisions" as to ownership. Such hearings are therefore of no constitutional account here, and the City's reliance on them is illegitimate.

    b.   **The United States Constitution, not local ordinances, determine what process is due.**

The City argues that its failure to allow an owner an opportunity to assert an ownership interest does not violate due process because "whether an owner has asserted ownership," is *irrelevant* under the City's Policy. Def's Mem at 8. In other words, according to the City, the

scope of the hearing, like the scope of the notice, is defined by the City's policy. The flaw again

is that the City's policy does not define due process. The authority the City relies on to support

its argument is inapposite. Def. Mem. at 8-9. In *Conn. Dept. of Public Safety v. Doe,* 538 U.S. 1

(2003), the state created a registry for persons convicted of specified sex offenses. Significantly,

the registry included language that the state had made "no determination that any individual

included on the registry is currently dangerous." *Id.* at 5. Despite this specific limitation,

plaintiffs, who had undeniably received all the process due them during the course of their

conviction, complained that they were denied an opportunity to establish their lack of current

dangerousness. Putting aside the question whether inclusion on the registry was a deprivation of

liberty, *Doe* upheld the right of Connecticut to create the registry for a specified category of sex

offenders, regardless of current dangerousness. *Id.* at 7-8. As such, a hearing to determine

"current dangerousness" would be a "bootless exercise," and was therefore not required by due

process. *Id.* Put another way, the absence of a hearing was simply part of the state created

*substantive* liberty interest that Connecticut was free to create and define. But, no reading of *Doe*

stands for the proposition that the state or local government can determine what process is due

prior to the deprivation of a protected property or liberty interest.[4] *See Black v. Snow,* 272 F.

Supp. 2d 21, 34 (D.C.D.C. 2003) (citations omitted) (upholding federal statute prohibiting

convicted felons from possessing a firearm, stating: "it remains true that ... before liberty may be

taken away, due process requires the government to afford individuals a hearing to prove or

---

[4] The City also cites *Steward v. Folz,* No. 05-3801, 2006 WL 1523177 *3 (7th Cir. 2006). The holding there is similar to the holding in *Doe,* and the decision is similarly inapposite. However, *Steward* is an unpublished opinion issued prior to January 1, 2007, and, as such, the City wrongly cited it in the first instance. Cir. Rule 32.1(d).

disprove a particular fact ... However, where the fact to be proven is not relevant to the legal scheme responsible for the deprivation ..." such a hearing is not required); *Towers v. Chicago*, 173 F.3d 619, 629 (7th Cir. 1999) (where plaintiffs "never alleged that the officers lacked probable cause to believe the illegal objects were within the vehicles or that plaintiffs could meet one of the exceptions to liability enumerated in the ordinances," absence of a preliminary hearing did not violate due process).[5]  As relevant here, the distinction is between the City's authority, consistent with the Fourteenth Amendment, to create and define substantive property interests, and the Fourteenth Amendment's prohibition against the City defining the procedures for deprivation of that interest in a manner that does not square with constitutionally mandated due process requirements. *See Youakim,* 71 F. 3d at 1289.  The City's failure to afford plaintiffs a hearing, the subject matter of which is their claim of entitlement to (ownership of) the cars the City has threatened to sell and  a "merits decision" as to ownership, (*see* p. 6 above), runs afoul of that prohibition.

c.      **The City's contention that plaintiffs may meaningfully assert at and secure a decision concerning their ownership at the existing hearing is  incorrect.**

After arguing that the assertion of an ownership interest is "irrelevant" under the City's policy, the City argues that it is entitled to summary judgment on Count I because owners *can*

_____

[5] The towing and sale of plaintiffs' cars by the City is undeniably an adjudicative act. Therefore, the City's reliance on *75 Acres, LLC v. Miami-Dade Country, Florida,* 338 F.3d 1288 (11th Cir. 2003), in which the court determined that the placement of a moratorium on the development of property during a criminal investigation regarding the property, was a legislative act and not an adjudicative act, is inapposite. *75 Acres* acknowledged that: "When an adjudicative act deprives an individual of a constitutionally protected interest, procedural due process is implicated and a court [must] apply the three-part balancing test [in *Mathews v. Eldridge, supra.*]"

7

assert an ownership interest. Def's Mem at 23, n. 18 ("Even though the mere assertion of ownership is not grounds for relief in the City's existing post-tow hearing ... That does not mean that an owner cannot assert ownership in the hearing.").[6] There are two flaws with this argument. First, it is controverted by the record. Consistent with the City's admitted policy, Plaintiff Kopec's request for a hearing was treated as "withdrawn" once the hearing officer determined that he was not contesting that the requisite unpaid parking tickets were due. Second, even if the hearing officer permitted Kopec to assert an ownership interest in his vehicle, the City admits that it would have been irrelevant to the outcome of the hearing and his car would have been sold by the City. Offering plaintiffs the opportunity to engage in a pointless exercise – asserting ownership of their vehicle when the assertion does not give rise to any decision concerning ownership, while still selling the car without providing any compensation to the owner – does not survive due process scrutiny.

> **d.** *Mathews v. Eldridge* **requires a meaningful process for class member to assert an ownership interest.**

Finally, the City argues that its process is more than adequate because, under *Mathews v. Eldridge, supra,* a meaningful opportunity to assert an ownership interest is not required. The *Eldridge* factors for determining whether the process provided satisfies due process are: (a) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous

---

[6] The City also argues that not only can class members assert their ownership interest but its notice letter adequately notifies class members of their right to do so by citing to Section 4-208 of the Illinois Vehicle Code. Thus, according to the City, its notice gives class members "full notice of what the City's policy is and what their alternative rights may be under the Code," and provides "enough information on which to seek legal advice." Deft's Mem at 22. Since the origin of the constitutional right to assert ownership is not the state statute, and the assertion of ownership is irrelevant to the outcome of the City's hearing, this reference in the notice does not render it constitutionally adequate.

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) the burden to the government of substitute procedural requirements.[7] The City's application of each of these factors is misguided.

### i.    The property interest at stake here is not "minimal."

First, despite the plethora of case law to the contrary, the City asserts that, based on this record, the loss of a vehicle "can only be characterized as a minimal deprivation." Def's Mem at 23. The support for the City's characterization is its speculation that "if the vehicle was of any significant value to the owner," (a) the owner "would not serially violate the parking laws in the first place, or would at least respond to the City's citations and notices and pay the fines long before the vehicle became subject to impoundment and disposition;" and (b) plaintiffs would "seek release or use of their cars and not only the right to assert their ownership interest ... while the City remains free to keep the vehicle as long as the owner fails to pay the debt." *Id.* at 24. In other words, the class members' conduct in not paying their debt *and* not demanding the immediate release of their cars – even though they do not (indeed cannot) challenge the impoundment – extinguishes the private interest at stake and permits the City to treat their cars as "unclaimed." In addition to showing a remarkable insensitivity of the poor and working poor residents of Chicago who often can not afford to pay their debt at the time, the City cites no support for this novel application of the first *Eldridge* prong and disregards the well-settled law to the contrary. The one case the City does cite, *Saukstelis v. City of Chicago,* 932 F.2d 1171 (7th Cir. 1991), stands for the non-controversial proposition that Chicago's pre-booting notices and

---

[7] Plaintiffs analyze why the *Eldridge* factors require the Court to find that the City's policy violate due process in Pltiffs' Mem. at 11-17.

9

hearing provide ample process *for the City to boot*, and the City's pre-towing notice and hearing

provides ample process *for the City to tow*. It says nothing about the City's right to permanently

deprive the owner of his or her vehicle. *See also Sutton v. City of Milwuakee,* 672 F.2d 644, 646

(7th Cir. 1982) (in rejecting a due process challenge to the towing of illegally parked cars without

a pre-towing hearing, the court emphasized that where the policy permitted vehicle owners to

retrieve cars without paying all outstanding parking ticket fines and fees, the property interest at

stake was a slight one because "[i]t is not the car itself but the use of the car for a short period,

usually a few hours, that is at stake."). Plaintiffs here do not challenge the booting or the

impoundment of their cars. Rather, they challenge the sale or destruction of their vehicles, and

claim damages based on an appropriate valuation scheme, such as fair market value. "[T]he use

of one's automobile is certainly an *important interest,* and deprivation of it for more than a brief

period could interfere severely with a person's ability to make his living and his access to both

the necessities and amenities of life." *Miller v. City of Chicago,* 774 F.2d 188, 192 (7th Cir.

1985) (internal citations omitted) (emphasis added); *Towers v. City of Chicago,* 979 F. Supp.

708, 714 (N.D. Ill. 1997) (quoting *Coleman v. Watt*, 40 F.3d 255, 260-61 (8th Cir. 1994))

(automobiles have a "central place in the lives of most Americans, providing access to jobs,

schools, and recreation as well as to the daily necessities of life"); *Perry v. Vill. of Arlington

Heights,* 905 F. Supp. 465, 468 (N.D.Ill. 1995)(describing "substantial" private interest in one's

vehicle as "often indispensable to day-to-day" life.).

### ii.   The risk of erroneous deprivation is high.

Second, the City argues that it is not disposing of the class members vehicles in the

mistaken belief that the owners have not asserted an ownership interest in the car. To the

10

contrary, the City knows who the owner is and thus the issue of ownership is "cut and dry."

Therefore, the City claims the right to dispose of the vehicles because "the assertion of ownership

is of no legal significance." Def's Mem at 22, 25. The City misses the point. By not allowing

owners to assert their ownership (and failing to notify them of their right to do so), the City sells

cars *it does not own* by mistakenly treating them as "unclaimed" vehicles. Meanwhile, the title

to the vehicle, the document that establishes actual and legal ownership, is never transferred from

the plaintiff owner to the City. That is the essence of an *erroneous deprivation*. Thus, the City's

reliance on *Sutton, supra,* for the proposition that no hearing is required because the issue

whether a person has asserted an ownership interest is "pretty cut and dried" is misguided. In

*Sutton,* where a pre-towing hearing was not practical and the owners could retrieve their cars

without paying all fines and fees, the issue to be determined, whether a vehicle was parked

illegally or not, was indeed a "cut and dried" question that did not require a hearing. Here,

however, determining whether a vehicle owner intends to assert his or her ownership in the car

is *not* "cut and dry" but rather is *impossible* without allowing owners an opportunity to do so.

Since ownership is central to the City's right to dispose of a car, it is not enough for the City to

speculate that those who do not pay all outstanding fines and costs have abandoned their

ownership interest in their property. A pre-deprivation hearing is practical and necessary to

determine whether an owner asserts his interest.

> iii. **The burden on the City of permitting class members to assert their
> ownership interest is minimal.**

Finally, the City claims that since the owner can assert ownership at the presently

available hearing, "it would be pure waste to require the City to add another hearing for that

11

purpose." Def's Mem at 25. The City has it backwards. The point is that if an owner can already assert an ownership interest at the presently available hearing, giving relevance to that assertion, as required by the Due Process Clause, would require no new hearing and impose no additional administrative burden. Indeed, the "hearing" could be very informal, to the point of not being formally convened at all, since the City already knows, from public records, who the owners are, and indeed accepts that the public records of ownership are accurate for purposes of advising the plaintiffs that their cars will be sold or destroyed if they do not make good on their unpaid parking tickets.

The City then attempts to frame the burden as requiring it to "keep the car safe until the owner decides to pay the full debt–which might be months or years later, or never." Def's Mem at 25. Plaintiffs are not requesting, and due process does not require, the City to store vehicles indefinitely, or even longer than the time necessary (several weeks, at most) to afford plaintiffs the notice and hearing to which they are constitutionally entitled and to acquire title to (ownership of) the vehicles, so that it can then lawfully sell or otherwise dispose of them, and at their true market value at that. Nothing more will be required. For those who assert their property interest but take no action to retrieve their car, the City need only store the vehicle as long as it takes to acquire an ownership interest in the vehicle.[8] (The proceeds of the sale or

---

[8] Under the current policy, because the City does not have title the cars, the value of the cars is greatly diminished. There are well-established procedures regarding the enforcement of judgment by which the City could obtain title to the cars. *See* 735 ILCS 5/12-101, *et seq.*; 625 ILCS 5/11-208.3(f) ("the municipality may commence a proceeding in the Circuit Court for purposes of obtaining a judgment on the final determination of [a parking] violation.... The judgment shall have the same effect and *may be enforced in the same manner* as other judgments for the recovery of money"). Were the City to avail itself of these procedures, the sale of the cars could net far greater revenue for the City and, as it would properly be applied to the debt owed by the plaintiffs, it would benefit the car owners as well.

disposition would then be applied to the debt plaintiffs owe–the unpaid tickets, towing and storage fees, and other transaction costs–with the remainder, if any, paid to plaintiffs). Moreover, if the City is correct that most class members do not care about their cars and will not assert their ownership, the City will be free to dispose of those cars as it chooses without acquiring title.

Finally, the City's last ditch effort to convince the Court that recognizing car owners ownership will create a burden is its rather outlandish speculation that it may face the burden of "owners ... try[ing] to leverage the City's limited parking space to their advantage by extorting above-market prices for their vehicles from the City in exchange for the City's attaining the right to dispose of them." Def's Mem at 26. Such groundless speculation requires no response.

**B.** **The post-deprivation remedies on which the City relies for summary judgment are not legally relevant to this case.**

Ignoring the law regarding when post-deprivation remedies can *ever* satisfy due process, the City asserts that "post-deprivation process is amply available if owners wish to argue that disposition of their vehicles violates state law."[9] Def's Mem at 15. The City ignores the fact that post-deprivation remedies are an adequate substitute for pre-deprivation process *only if* the per-deprivation process is "clearly impractical or impossible" or the government action that resulted in the deprivation was "random and unauthorized." As described above, *supra* at 12-13, allowing the assertion of ownership is neither impractical or impossible in this case. The City does not assert otherwise.

---

[9] This argument, like several other arguments the City makes, *see supra* at note 1, is premised on the City's mistaken understanding that plaintiffs are relying on the Illinois Vehicle Code to state a cause of action.

Moreover, the property deprivation in this case was pursuant to policy, not the result of random and unauthorized acts. The City relies on *Veterans Legal Defense Fund v. Schwartz,* 330 F.3d 937, 941 (7th Cir. 2003), where the court found that the plaintiff veterans had no due process action, but had to avail themselves of state court remedies *precisely because* "the denial of the [veteran] hiring preferences [in favor of the plaintiffs] was random and unauthorized." The court explained:

> Section 1983 must be preserved to remedy only those deprivations which actually occur without adequate due process of law, such as those which result from a state's conscious decision to ignore the protections guaranteed by the constitution. It should not be employed to remedy deprivations which occur at the hands of a state employee who is acting in direct contravention of the state's established policies ... Such limitation upon § 1983 maintains the delicate balance between the state and federal judicial systems, leaving the former to remedy individual torts and the latter to address property deprivations which occur without adequate due process protection.

*Id.* at 940, *quoting Easter House v. Felder,* 910 F.2d 1387, 1404 (7th Cir. 1990). *See also Gable v. Chicago,* 296 F.3d 531, 539-40 (7th Cir. 2002)(where the mistaken information about the whereabouts of a handful of vehicles and damage to other vehicles held in the City impoundment lot was not pursuant to policy, but was the result of negligent or intentional torts by City employees, due process claim defeated because of the existence of a meaningful post-deprivation remedy). Because the property deprivation in this case are ones the City effects pursuant to its "established polic[y]," *Veterans Legal Defense Fund,* 330 F.3d at 940, the availability of any post-deprivation remedies are of no constitutional moment here.

## III. CONCLUSION

The City's motion for partial summary judgment should be denied.

14

Respectfully submitted,

/s/   Mary M. Rowland
One of the Attorneys for the Plaintiffs


Matthew J. Piers
Mary M. Rowland
Cara Hendrickson
**Hughes Socol Piers Resnick & Dym, Ltd.**
Three First National Plaza, Suite 4000
Chicago, Illinois 60602
(312) 580-0100

Judson H. Miner
George F. Galland, Jr.
**Miner Barnhill & Galland, P.C.**
14 West Erie Street
Chicago, Illinois  60610
(312) 751-1170

Dated: September 17, 2010